**IN THE UNITED STATES BANKRUPTCY COURT FOR
THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| IN RE:<br><br>JASON ACOSTA RAMOS and LIMARIE MOJICA VAZQUEZ,<br><br>Debtors. | CASE NO. 21-00002 MAG<br><br>Chapter 7 |
| JASON ACOSTA RAMOS and LIMARIE MOJICA VAZQUEZ,<br><br>Plaintiffs,<br><br>v.<br><br>COOPERATIVA DE AHORRO Y CREDITO DE LAJAS,<br><br>Defendant. | ADV. PROC. NO. 21-00123<br><br>FILED & ENTERED ON 4/4/2024 |

**OPINION AND ORDER**

Pending before the court is a motion for summary judgment brought by defendant Cooperativa de Ahorro y Credito de Lajas ("Defendant") in an adversary proceeding for violation of the automatic stay under 11 U.S.C. § 362(a) and of the discharge injunction under 11 U.S.C. § 524(a)(2) filed by plaintiffs Jason Acosta Ramos and Limarie Mojica Vazquez ("Plaintiffs"). (Adv. Dkt. # 36.) As explained below, Plaintiffs claim that Defendant violated the automatic stay and the discharge injunction by filing the informative form 480.6A ("Form 480.6A") with the Puerto Rico Treasury Department (the "Treasury Department") instead of form 480.6D ("Form 480.6D"), which resulted in the assessment of a tax debt for the 2020 tax year in the amount of $575.18. Defendant requests summary judgment finding that such action

does not constitute a violation of the discharge injunction and for the case to be dismissed.

Plaintiffs oppose alleging that there are issues of material facts that preclude the entry of

summary judgment, and that Defendant is not entitled to the remedy requested as a matter of law.

(Adv. Dkt. ## 48, 49.)  For the reasons stated herein, the motion for summary judgment filed by

Defendant is granted and the case is dismissed.

### I.      JURISDICTION

This court has jurisdiction over the subject matter and the parties pursuant to 28 U.S.C.

§§ 1334 and 157(a), L. Civ. R. 83K(a), and the General Order of Referral of Title 11 Proceedings

to the United States Bankruptcy Court for the District of Puerto Rico, dated July 19, 1984

(Torruella, C.J.). This is a core proceeding in accordance with 28 U.S.C. § 157(b).

### II.     PROCEDURAL BACKGROUND

Plaintiffs filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on

January 4, 2021, which was docketed as case number 21-00002. (Bankr. Dkt. # 1.)

Plaintiffs included Defendant as a creditor in schedule D with a claim in the amount of

$12,478.71 secured by shares with a value of $3,000.00. (Bankr. Dkt. # 11, p. 12.) On February

2, 2021, Plaintiffs filed an amended schedule E/F in which they included Defendant as an

unsecured creditor with a claim of $10,164.57 for consumer credit. (Bankr. Dkt. # 18, p. 2.)

Defendant did not file a proof of claim. (Bankr. Claims Register.)

On February 2, 2021, the Chapter 7 Trustee filed a report of no distribution. (Bankr. Dkt.

# 22.)

On April 9, 2021, the court entered the order of discharge.  On even date, an order

discharging the trustee and closing the estate was also entered. (Bankr. Dkt. ## 27, 28.)

On December 3, 2021, Plaintiffs filed a motion to reopen the case which the court granted. (Bankr. Dkt. ## 31, 33.)

On December 30, 2021, Plaintiffs commenced the captioned adversary proceeding against Defendant requesting the court the following: (1) to order Defendant to withdraw Form 480.6A filed with the Treasury Department after the entry of Plaintiffs' discharge; (2) find Defendant in contempt of court for violating 11 U.S.C. §§ 362 and 524; and (3) award Plaintiffs damages, costs, and attorney's fees pursuant to 11 U.S.C. §§ 362(k) and 105(a). (Adv. Dkt. # 1.)

On April 20, 2022, Defendant filed its answer to complaint. (Adv. Dkt. # 13.)

On July 28, 2023, Defendant moved for summary judgment against Plaintiffs and filed a separate statement of uncontested facts (the "Motion for Summary Judgment"). (Adv. Dkt. ## 36, 37.)  And on October 3, 2023, Plaintiffs opposed the entry of summary judgment also filing a separate statement of uncontested facts. (Adv. Dkt. ## 48, 49.)

On November 22, 2023, Defendant filed a reply to Plaintiffs' opposition to the Motion for Summary Judgment. (Adv. Dkt. # 63.)

### III.    SUMMARY JUDGMENT STANDARD

"In bankruptcy, summary judgment is governed in the first instance by Bankruptcy Rule 7056." Cousins Int'l Food, Corp. v. Vidal, 565 B.R. 450, 461 (B.A.P. 1st Cir. 2017) (citing Desmond v. Varrasso (In re Varrasso), 37 F.3d 760, 762 (1st Cir. 1994)). Fed. R. Bankr. P. 7056 incorporates Fed. R. Civ. P. 56, which provides that a court shall grant summary judgment when the record shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A]n issue is 'genuine' if the record permits a rational factfinder to resolve that issue in favor of either party." Jarvis v. Vill. Gun Shop, Inc., 805 F.3d 1, 7 (1st Cir. 2015). "[A] fact is 'material' 'if its existence or

nonexistence has the potential to change the outcome of the suit.'" Id. (citing Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 4 (1st Cir. 2010)).

In assessing a motion for summary judgment, the court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging in all reasonable inferences in that party's favor." Podiatrist Ass'n, Inc. v. La Cruz Azul de P.R., Inc., 332 F.3d 6, 13 (1st Cir. 2003) (citing Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990)). "A swing of the summary judgment axe can be averted if the nonmoving party adduces competent evidence demonstrating the existence of a genuine dispute about a material fact." Theriault v. Genesis Healthcare LLC, 890 F.3d 342, 348 (1st Cir. 2018). "If the non-movant fails to make the required showing on such an issue and the issue is a dispositive one, summary judgment is appropriate." Harrington v. Simmons (In re Simmons), 810 F.3d 852, 857 (1st Cir. 2016). A nonmoving party "cannot defeat a summary-judgment motion with 'conclusory allegations' or 'unsupported speculation.'" Villeneuve v. Avon Prods., 919 F.3d 40, 54 (1st Cir. 2019).

In the U.S. District Court for the District of Puerto Rico, Local Civil Rule 56 sets forth the requirements for summary judgment. A party moving for summary judgment must file, annexed to its motion, "a separate, short and concise statement of the material facts, set forth in numbered paragraphs, as to which the moving party contends there is no genuine issue of material fact to be tried." L. Civ. R. 56(b). Moreover, "[e]ach asserted fact in the statement shall be supported by a record citation." Id. Under Local Civil Rule 56(c), the party opposing summary judgment must "submit with its oppositions a separate, short, and concise statement of material facts," admitting, denying, or qualifying the facts by reference to each numbered paragraph with references to the record. L. Civ. R. 56(c). Moreover, "[f]acts contained in a supporting or opposing statement of material facts, if supported by record citations as required

-4-

by this rule, shall be deemed admitted unless properly controverted." L. Civ. R. 56(e). The court

has "no independent duty to search or consider any part of the record not specifically referenced

in the parties' separate statement of facts." Id. "[F]ailure to present a statement of disputed facts,

embroidered with specific citations to the record, justifies the court's deeming the facts presented

in the movant's statement of undisputed facts admitted." Cosme-Rosado v. Serrano-Rodriguez,

360 F.3d 42, 45 (1st Cir. 2004) (citing Ruiz Rivera v. Riley, 209 F.3d 24, 28 (1st Cir. 2000)).

## IV. UNCONTESTED FACTS

After reviewing Defendant's statement of uncontested facts ("D SUF") (Adv. Dkt. # 37)

and Plaintiff's opposition thereto (Adv. Dkt. ## 48, 49), the court finds that the following

material facts are uncontested pursuant to Fed. R. Civ. P. 56 and L. Civ. R. 56, made applicable

to these proceedings by Fed. R. Bankr. P. 7056 and P.R. LBR 1001-1(b) and (d), as found in the

record of this case.

On January 4, 2021, Plaintiffs filed a voluntary petition for relief under Chapter 7 of the

Bankruptcy Code. (Bankr. Dkt. #1.)

Defendant was included in Plaintiffs' schedule D as "COOP AC LAKAS" with a claim in

the amount of $12,478.71, of which $3,000.00 were secured by shares. (D SUF at Adv. Dkt. #

37, p. 2, ¶ 3; Bankr. Dkt. # 11, p. 12.)

Later, in amended schedule E/F, Defendant was included with an unsecured claim in the

amount of $10,164.57 for consumer credit. (Bankr. Dkt. # 18, p. 2.)

On April 9, 2021, the court entered Plaintiffs' discharge. (Bankr. Dkt. # 27.)

On April 11, 2021, notice of Plaintiffs' discharge was sent to Defendant to the following

address: 14 Jose Toro Basora, Lajas PR 00667-2032. (D SUF at Adv. Dkt. # 37, p. 2, ¶ 7; Bankr.

Dkt. # 29; Plaintiffs' opposition to D SUF, Adv. Dkt. # 49, p. 1, ¶ 1 admitting Defendant's uncontested fact.)

Defendant is required by Puerto Rico law to file with the Treasury Department Form 480.6D to inform debts that are discharged in a bankruptcy case. (D SUF at Adv. Dkt. # 37, pp. 2-3, ¶ 8; D SUF at Adv. Dkt. # 37, Exhibit 1, p. 6, ¶ 5; D SUF at Adv. Dkt. # 37, Exhibit 2, pp. 9-17; Plaintiffs' opposition to D SUF at Adv. Dkt. # 49, p. 1, ¶ 1 admitting Defendant's uncontested fact.)

Defendant erroneously filed Form 480.6A instead of Form 480.6D with the Treasury Department. (D SUF at Adv. Dkt. # 37, p. 3, ¶ 9; D SUF at Adv. Dkt. # 37, Exhibit 3, p. 19; Plaintiff's opposition to D SUF at Adv. Dkt. # 48, Exhibit II, p. 14; Plaintiffs' opposition to D SUF at Adv. Dkt. # 49, p. 2, ¶ 4 admitting Defendant's uncontested fact of the filing but not admitting that it was filed by mistake because Plaintiffs are without knowledge or information sufficient to form a belief as to the truth of such statement.)

Form 480.6A is used to inform the Treasury Department of condoned debts. (D SUF at Adv. Dkt. # 37, p. 3, ¶ 10; D SUF at Adv. Dkt. # 37, Exhibit 1, p. 7, ¶ 7; D SUF at Adv. Dkt. # 37, Exhibit 4, pp. 21-25; Plaintiffs' opposition to D SUF at Adv. Dkt. # 49, p. 1, ¶ 1 admitting Defendant's uncontested fact.) Form 480.6D is used to inform the Treasury Department of a discharged debt.

Box 7 of Form 480.6A reads in English "Debt Discharge" and box 19 of Form 480.6D also reads in English "Debt Discharge." (D SUF at Adv. Dkt. # 37, p. 3, ¶¶ 11, 12; D SUF at Adv. Dkt. # 37, Exhibit 4, p. 23; D SUF at Adv. Dkt. # 37, Exhibit 2, p. 13; Plaintiffs' opposition to D SUF at Adv. Dkt. # 49, p. 1, ¶ 1 admitting Defendant's uncontested fact.)

On September 29, 2021, the Treasury Department mailed Plaintiffs a Notice of Appraisal or Certificado de Tasacion in the Spanish language, notifying that they owed such entity a tax debt of $575.18. Defendant's filing of Form 480.6A instead of Form 480.6D caused such tax assessment for the 2020 tax term. (D SUF at Adv. Dkt. # 37, pp. 3-4, ¶¶ 14, 15; Plaintiffs' opposition to D SUF at Adv. Dkt. # 49, p. 1, ¶ 1; Adv. Dkt. # 1, p. 2, ¶¶ 5, 6.)

On June 16, 2022, after conferring with the Treasury Department and following its instructions, Defendant filed through SURI ("Sistema Unificado de Rentas Internas"), the digital tool of the Puerto Rico Treasury Department, amendments to informative form including a 480.6D for Plaintiffs and eliminating Form 480.6A. Such information was supported with Unsworn Statement under Penalty of Perjury by Eric Ramirez Jusino, collections supervisor for Defendant and copy of the amended Form 480.6A submitted on June 16, 2022. (D SUF at Adv. Dkt. # 37, p. 4, ¶ 16; D SUF at Adv. Dkt. # 37, Exhibit 1, p. 7, ¶ 8; D SUF at Adv. Dkt. # 37, Exhibit 5, pp. 27-30.)

Plaintiffs allege a violation of the discharge order by Defendant due to the filing of the wrong informative form with the Treasury Department which caused the Treasury Department to send Plaintiffs the Notice of Appraisal dated September 29, 2021 advising Plaintiffs that they had an outstanding debt from their 2020 tax term in the amount of $575.18, and its disregard to an extrajudicial communication dated October 27, 2021 requesting that Defendant correct the wrong form submitted to the Treasury Department which improperly created an obligation to pay taxes. (D SUF at Adv. Dkt. # 37, p. 4, ¶ 17; D SUF at Adv. Dkt. # 37, Exhibit 6, p. 34; Plaintiffs' opposition to D SUF at Adv. Dkt. # 48, p. 6, ¶ 25; Plaintiffs' opposition to D SUF at Adv. Dkt. # 48, Exhibit II, pp. 13-15; Plaintiffs' opposition to D SUF at Adv. Dkt. # 49, p. 2, ¶ 6.)

It should be noted that Defendant submitted copy of a deposition transcript in which Plaintiffs admitted that they had not received collection letters or phone calls from the Treasury Department. They stated that they learned that the 2020 tax debt assessed was accruing interest due to non-payment when they accessed the Treasury Department's digital website, SURI. (Adv. Dkt. # 37, Exhibit 6, p. 34.)

## V.  APPLICABLE LAW AND DISCUSSION

In the complaint Plaintiffs request the following: (1) to order Defendant to withdraw Form 480.6A filed after the entry of the Plaintiffs' discharge; (2) to find Defendant in contempt of court for violating 11 U.S.C. §§ 362 and 524; and (3) to award Plaintiffs damages, costs, and attorney's fees pursuant to 11 U.S.C. §§ 362(k) and 105(a). (Adv. Dkt. # 1.)

### (a) Injunctive relief

Defendant includes as an uncontested fact that on June 16, 2022, it withdrew Form 480.6A and filed the correct one, Form 480.6D. (D SUF at Adv. Dkt. # 37, p. 4, ¶ 16; D SUF at Adv. Dkt. # 37, Exhibit 1, p. 7, ¶ 8; D SUF at Adv. Dkt. # 37, Exhibit 5, pp. 27-30.) Although Plaintiffs stated in their opposition to D SUF that this fact "is not admitted because [P]laintiffs are without knowledge or information sufficient to form a belief as to the truth of the statement," (Plaintiff's opposition to D SUF at Dkt. # 49, p. 2, ¶ 5) Defendant supported this fact with Unsworn Statement under Penalty of Perjury by Eric Ramirez Jusino, collections supervisor for Defendant and copy of the amended Form 480.6A submitted on June 16, 2022. Therefore, this court will deem this an uncontested fact and thus finds that the request for injunctive relief is now moot.

**(b) Violation of 11 U.S.C. § 362**

Plaintiffs included in the complaint a claim for violation of 11 U.S.C. § 362(a) for the

filing of Form 480.6A arguing that it constituted an unlawful collection action (Adv. Dkt. # 1, p.

3.) Although neither Plaintiffs nor Defendant addressed this claim in the Motion for Summary

Judgment and the opposition thereto the court will address it as it is included as a cause of action

in the complaint.

The Bankruptcy Code in its section 362(a)(1) provides as follows:

(a) Except as provided in subsection (b) of this section, a petition filed under
section 301, 302, or 303 of this title, or an application filed under section 5(a)(3)
of the Securities Investor Protection Act of 1970, operates as a stay, applicable to
all entities, of--
(1) the commencement or continuation, including the issuance or employment of
process, of a judicial, administrative, or other action or proceeding against the
debtor that was or could have been commenced before the commencement of the
case under this title, or to recover a claim against the debtor that arose before the
commencement of the case under this title[.]

11 U.S.C. § 362(a)(1). The "automatic stay prevents creditors from taking any collection actions

against the debtor or the property of the debtor's estate for pre-petition debts." In re Slabicki, 466

B.R. 572, 577 (B.A.P. 1st Cir. 2012). It "is one of the basic protections under the Bankruptcy

Code and becomes operative by the filing of the bankruptcy petition." In re Montalvo, 537 B.R.

128, 140 (Bankr. D.P.R. 2015) (citing Soares v. Brockton Credit Union (In re Soares), 107 F. 3d

969, 971 (1st Cir. 1997)). It is extremely broad in scope and "provides debtors with one of the

cornerstone protections under bankruptcy law, giving debtors a 'breathing room' from the

pressures of their creditors." Id.

A debtor seeking damages for violation of the automatic stay "bears the burden of

proving by a preponderance of the evidence the following three elements: (1) that a violation of

the automatic stay occurred; (2) that the violation was willfully committed; and (3) that the

-9-

debtor suffered damages as a result of the violation." In re Slabicki, 466 B.R. 572, 577–78

(B.A.P. 1st Cir. 2012) (citing In re Panek, 402 B.R. 71, 76 (Bankr. D. Mass. 2009)).The only fact

alleged by Plaintiffs in support of a finding of a violation of the automatic stay is Defendant's

filing of Form 480.6A informing that its debt had been condoned. Although the parties have not

provided information regarding when that form was sent to the Treasury Department, the copy of

Form 480.6A sent also provides that the debt was discharged, thus the court must conclude that

Form 480.6A was sent to the Treasury Department after the discharge order was entered.

Furthermore, the complaint provides as follows: "Wherefore, Plaintiffs pray that this Court:

order Defendant forthwith to withdraw the false form (480.6A) filed with the Puerto Rico

Treasure Department **after a discharge was entered in this case.**" (Adv. Dkt. # 1) (emphasis

ours).

Pursuant to 11 U.S.C. §362(c)(2)(C) the automatic stay terminates at the time a discharge

is granted. "[T]he existence of a discharge means that there is no automatic stay from which

relief may be granted to permit an action against the debtor." Ruvacalba v. Munoz (In re

Munoz), 287 B.R. 546, 551 (B.A.P. 9th Cir. 2002.)  Therefore, the court finds that Defendant

could not have violated the automatic stay under 11 U.S.C. § 362 because, as admitted by

Plaintiffs, their discharge had been entered at the time Defendant sent Form 480.6A to the

Treasury Department and after the automatic stay had terminated. (Adv. Dkt. # 1, p. 3.)

**(c) Violation of 11 U.S.C. § 524(a)(2)**

The Bankruptcy Code in its section 524(a)(2) provides as follows:

(a) A discharge in a case under this title--
(2) operates as an injunction against the commencement or continuation of an
action, the employment of process, or an act, to collect, recover or offset any such
debt as a personal liability of the debtor, whether or not discharge of such debt is
waived;

-10-

11 U.S.C. § 524(a)(2). The foregoing provision applies to all debts discharged under 11 U.S.C. § 727 and therefore, includes Plaintiffs' personal liability as to the Defendant's debt. See, 4 Richard Levin & Henry J. Sommer, Collier on Bankruptcy ¶ 524.02 (16th ed. 2024). The injunction under the foregoing section "extends to all forms of collection activity, including letters, phone calls, threats of criminal proceedings or other adverse actions intended to bring about repayment." Id.

"To prove a discharge injunction violation, a debtor must establish that the creditor "(1) has notice of the debtor's discharge . . .; (2) intends the actions which constituted the violation; and (3) acts in a way that improperly coerces or harasses the debtor." Bates v. CitiMortgage, Inc., 844 F.3d 300, 304 (1st Cir. 2016) (citing Best v. Nationstar Mortgage LLC (In re Best), 540 B.R. 1, 9 (B.A.P. 1st Cir. 2015)).  "The burden of proof is on the former debtor to establish by clear and convincing evidence that [the] creditor violated the post-discharge injunction." In re Best, 540 B.R. at 9 (citing Manning v. CitiMortgage, Inc. (In re Manning), 505 B.R. 383, 386 (Bankr. D.N.H. 2014)).

"In assessing violations of the automatic stay and the discharge injunction, the core issue is whether the creditor acted in such a way as to 'coerce' or 'harass' the debtor improperly." Pratt v. GMAC (In re Pratt), 462 F.3d 14, 19 (1st Cir. 2006). "An action is coercive where it is 'tantamount to a threat,' . . . or places the debtor 'between a rock and hard place' in which he would lose either way." In re Lumb, 401 B.R. 1, 7 (B.A.P. 1st Cir. 2009) (citing Jamo v. Katahdin Fed. Credit Union (In re Jamo), 283 F.3d 392, 402 (1st Cir.2002); Diamond v. Premier Capital, Inc. (In re Diamond), 346 F.3d 224, 227 (1st Cir. 2008)). In the First Circuit, "courts 'assess whether conduct is improperly coercive or harassing under an objective standard—the

debtor's subjective feeling of coercion or harassment is not enough.'" <u>Kirby v. 21st Mortg. Corp.</u>, 599 B.R. 427, 440 (B.A.P. 1st Cir. 2019) (citing <u>Bates</u>, 844 F.3d at 304).

In weighing whether a creditor's conduct meets the objective standard, "the circuit considers the facts and circumstances of each case, including factors such as the immediateness of any threatened action and the context in which a statement is made." <u>Id</u>. (citing <u>In re Ramirez Rosado</u>, 561 B.R. 598, 605 (B.A.P. 1st Cir. 2017)). "To succeed on a complaint alleging a violation of the discharge injunction, a debtor need not allege that the creditor made an explicit threat … however, a creditor violates the discharge injunction **only if it acts to collect or enforce a prepetition debt**; bad acts that do not have a coercive effect on the debtor do not violate the discharge." <u>In re Lumb</u>, 401 B.R. at 7 (emphasis ours). In the case of <u>In re Schlichtmann</u> the bankruptcy court explained the scope of the discharge injunction by stating the following:

> The discharge prohibits prepetition creditors only from collecting their prepetition debts. It is not [a] lifelong shield against other acts – including demands, threats, assertions of claim, and litigation – by those same creditors, even where these other acts are undertaken wrongfully and in bad faith. **If an act is not in fact one to collect or enforce a prepetition debt, then whatever its faults, it is not a violation of the discharge, even though undertaken by the holder of a discharged debt**.

<u>In re Schlichtmann</u>, 375 B.R. 41, 68 (Bankr D. Mass. 2003) (emphasis ours).

For example, in <u>Bates</u>, 844 F.3d at 306-307, the Court of Appeals for the First Circuit affirmed the bankruptcy court's ruling that CitiMortgage did not violate the discharge injunction when it provided incorrect information to the Internal Revenue Service that discharged chapter 7 debtors were personally liable for a discharged secured debt. The Bateses said that the 1099-A Forms the creditor issued reported bad information because they were no longer personally liable for the mortgage debt so the creditor should not have checked the box that provided otherwise. The Bateses demanded the revocation of the 1099-A Forms because "they were terrified they

would owe additional income taxes unless they resolved the matter with FreddieMac or Citimortgage." Bates, 844 F.3d at 304. In the case of Bates, the creditor did not revoke the incorrect forms despite the request by the Bateses to do so, just like in the instant case. Id. Form 1099A sent to the Bateses provided that they "may" have a tax liability. The First Circuit agreed with the bankruptcy court and held that ultimately the 1099A Forms did not demand payment or threaten any collection action against the debtors. While the 1099A Forms without a doubt caused the debtors stress and concern, their subjective feeling of coercion was not enough to prove a discharge violation. Furthermore, as to the Bateses' claim that the discharge injunction was violated because the creditor failed to correct the 1099A Forms, the First Circuit stated that "[b]ecause there were no consequences and no attempt to collect a debt, Freddie Mac's failure to retract the 1099-A Forms does not give rise to an inference of coercion." Bates, 844 F.3d at 306.

In this case, Plaintiffs argue that sending the incorrect information to the Treasury Department which in turn prompted the Treasury Department to send them Notice of Appraisal advising them that they had an outstanding debt from their 2020 tax term in the amount of $575.18, amounts to the level of coercion and harassment constituting a violation to the discharge injunction. But just as the First Circuit reasoned in the case of Bates, the action taken by Defendant in this case was not illicit, the parties agree that the Defendant was required to send such information to the Treasury Department and here, as in there, the consequence is perhaps needing tax advice and in no way raises to the level of coercion by the Defendant into paying the discharged debt. Bates, 844 F.3d at 306. And, as in the case of Bates, the Defendant's failure to correct the form sent to the Treasury Department when asked to do so "does not give rise to an inference of coercion" either. Id. Sending the incorrect form to the Treasury Department may have been a careless mistake, one may argue negligent, and even if it had been done knowingly,

-13-

which the court has no reason to believe, the court cannot conclude that it was an attempt to collect the Defendant's discharged debt because at no time have Plaintiffs established or even alleged that Defendant sought payment of the discharged debt, implicitly or explicitly, in exchange for sending the correct form to the Treasury Department.

Conversely, in the case of in Perez v. P.R. Treasury Department (In re Padilla), 2023 Bankr. LEXIS 652 (Bankr. D.P.R. Mar. 14, 2023), the bankruptcy court found that the Treasury Department had violated the discharge injunction when it sent a collection notice to discharged chapter 7 debtors regarding a discharged non-priority unsecured tax debt. The notice sent by the Treasury Department contained language that they had to pay such debt immediately and threatened that failure to pay could entail withholding of payments with their financial institution, the seizure of real and personal property, and notifying the credit bureau, among others. The court determined that the collection notice constituted "a demand for payment of a pre-petition discharged debt, and that the 'immediateness' of the threatened action [was] 'tantamount to a threat' and 'coercive, and thus a violation of the discharge order." In re Padilla, 2023 Bankr. LEXIS 652, at *35.

Again, under the objective standard and considering the facts and circumstances of Defendant's actions, the filing of the erroneous informative form with the Treasury Department to state that the debt had been condoned did not improperly coerce or harass Plaintiffs in violation of 11 U.S.C. § 524(a)(2)'s discharge injunction because Defendant was not attempting to collect on its discharged debt. Per the uncontested facts, Defendant is required by law to file Form 480.6D regarding debts that are discharged in bankruptcy. Plaintiffs accepted this fact. (Plaintiffs' opposition to D SUF at Adv. Dkt. # 49, p. 1, ¶ 1.) It filed a different form for condoned debts-Form 480.6A- in which it filled only the "debt discharge" box. (D SUF at Dkt. #

-14-

37, Exhibit 3, p. 19.) Both forms include the same term, "debt discharge", in the English language and it was the only box filled in both documents; Form 480.6A filed initially and Form 480.6D filed upon correcting the error and withdrawing Form 480.6A. The logical inference is that Defendant filed Form 480.6A, albeit the wrong form, precisely to inform the Treasury Department that its debt had been discharged.

Plaintiffs sent a letter to Defendant requesting it to withdraw Form 480.6A and Defendant did not do so until after the filing of this adversary proceeding. While Defendant could have certainly acted promptly to withdraw the erroneous form, the court finds that such failure to act constitutes a bad act that did not ultimately result in coercing Plaintiffs into paying a discharged debt. The court notes that the Notice of Appraisal sent by the Treasury Department to Plaintiffs notifying that they owed a tax debt of $575.18 is not part of the record in this case. But Plaintiffs have made no allegation that this notice demanded payment or threaten any action. As admitted by Plaintiffs, they requested Defendant to withdraw the form due to the accrual of interest for the 2020 tax debt as reflected in the SURI system of the Treasury Department, but they did not receive phone calls or collection letters from the Treasury Department or Defendant demanding payment or threatening a collection action. As stated before, a subjective feeling of coercion is not enough to prove a discharge violation.

In sum, the court finds that Defendant did not violate the discharge injunction under 11 U.S.C. § 524(a)(2) as its actions did not improperly coerce or harass Plaintiffs into paying Defendant's discharged debt. This ruling is without prejudice to any cause of action Plaintiffs may have under non-bankruptcy law against Defendant for the damages caused by the filing of Form 480.6A instead of Form 480.6D with the Treasury Department, if any.

## VI.    CONCLUSION

For the reasons stated above, the court grants the Motion for Summary Judgment filed by

Defendant. (Adv. Dkt. ## 36, 37.) A separate judgment dismissing the case will be entered

accordingly.

IT IS SO ORDERED.

In Ponce, Puerto Rico, this  day 4th day of April 2024.

María de los Ángeles González
United States Bankruptcy Judge

-16-